I'm Daniel LaRue and I represent the plaintiff appellant Kofi Kyei in this matter. How do you pronounce the last name? I'm sorry? How does the plaintiff pronounce his last name? Kyei. Kyei? Yes. Kyei. Sure. I'd like to reserve five minutes for rebuttal. Sure. Thank you. You might just speak up just a little bit, even by pulling the mic up or speaking into the mic a little bit. Okay, I'm sorry. I know these young guys on my right, they'll hear it easy, but we old guys from Idaho, we're having a tough time hearing you. Thank you, Your Honor. This particular case, the initial brief was actually filed by the plaintiff appellant on his own behalf. I took up this case and filed a reply brief and a further excerpt of record, so there is no initial excerpt of record. And the issue in this case is, I think, of profound importance, and that is whether a union relations privilege exists. I've submitted a State of Alaska Supreme Court decision that came out four days after I filed my reply brief, which is Peterson v. State of Alaska. In that case, Alaska is the first court that I'm aware of to recognize the union relations privilege as implied in Alaska's companion statute to Section 8, 1A of the National Labor Relations Act. Is there any Oregon authority? This is in Oregon. This case was tried in Oregon. Yes, Your Honor. Under Rule 501, it's Title VII action, so the privilege would apply. It would be Federal and would arise out of 29 U.S.C. 158A1, which is the Federal version of the Alaska statute that was relied on, which basically prevents interference. I guess what I meant was, is there any case that says what this Alaska case says that would apply to us? No, there is not, Your Honor. This is an issue of first impression for the Ninth Circuit, for the Federal courts, as far as I'm aware of. There is a National Labor Relations Board opinion that the State of Alaska relied on in the Peterson case, which basically relied on 29 U.S.C. 158A1. Basically, under that statute, interfering with communications between a union member and a union representative was considered an unfair labor practice. What did the union rep testify to that should have been privileged? The union rep, both Meyer and Pauley, testified to a number of matters. Although the district, the magistrate, the judge, did exclude some of the testimony regarding the grievance process, they were allowed to testify regarding specifically in the further excerpts of Record 26 through 31. There are e-mails. Basically ---- Who e-mails? Yes, between Mr. Pauley, with Mr. Meyer on C-seat on some of them, and Mr. Chai. They basically are giving him advice regarding discipline. One of them says you're being watched. Watch what you do. Keep track of your time. Why is that so damaging? Basically, those communications show that Mr. Chai was having issues he was trying to deal with with the employer. And in trying to deal with those issues, he sought advice from the union representatives, which turned out to be a grievance process. And that advice, he needed candid, frank information about what he should do. And some of it is incriminating regarding ---- Well, that's what I'm trying to ask you. What's the worst thing that came out that you say should have been privileged? If they say they're watching you, keep track of your time, that doesn't strike me as all that prejudicial. In the FRE, there's one e-mail. I can't hear you, sir. I'm sorry. FRE 26, basically, where Mr. Pauly, who's the union rep, tells Mr. Chai that he needs to do his audit, and this is the number one thing he has to do, and he will be disciplined against you if he doesn't. Please do everything to complete your tasks. That means use all work time for work. Save grievance stuff after hours. Do not give them more items to include in any future action. Okay. So what's so powerful about that? It shows that Mr. Chai was having issues with his employer, that he sought frank communications and advice regarding what he should do. Well, there's no dispute about the fact that he sought advice from the union. That's not a disputed fact. No, Your Honor. Okay. So I'm saying what if this is you say it's privileged communication. I thought maybe he confessed to wrongdoing or something. When you tell me what was confidential, they're saying keep track of your time. And, I mean, you didn't really direct me to anything that was very damaging. Well, basically, some of the other e-mails go on to say Mr. Pauly, who was the union What's the worst thing that you've got that, if confidential, would have done him harm? I think the worst thing is probably Exhibit 203, which is F.R.E. 28. It's an e-mail between Mr. Chai and Mr. Pauly. Basically, it says that your notes do not specifically address the written reprimands. You did not inform the supervisor of the DAS meeting for any minutes before the start of the meeting. The only way you are going to get out of a reprimand removed is to show documentation that this is false. So, basically, he was going to be reprimanded, and he sought advice from the union. And they gave him advice on that, basically. And it's very incriminating if the union who is representing him thinks that he may have done something wrong, then if that's submitted to a jury, that's going to be extremely prejudicial to the plaintiff in his case. And that's what happened in this case in particular, is the testifying of the Meyers and Pauly, although it was limited to these e-mails and certain other facts. It gave the impression that the union was not on Mr. Chai's side. And in particular, Mr. Pauly testified as to his vote in the union meeting, which he voted not to support Mr. Chai, but the union, it's undisputed that the union itself voted to support Mr. Chai in the grievance process. Now, allowing testimony about the vote on his discipline, on whether to challenge his discipline or not, by one of the people that represented him, is catastrophic to his case. And in particular, it has terrible ramifications for unions. If under Title VII, there's an administrative exhaustion requirement, and in order to bring a case in court, you have to go through exhaust your administrative remedies, well, if an employee can't seek advice from his union representative without being disclosed, then he's not going to participate in the grievance process. And this is exactly what the State of Alaska was concerned about when it found that there is a union relations privilege. But you would agree, wouldn't you, that the district court did limit the testimony? In fact, they prohibited the department from inquiring into the communications between your client and the union representatives about grievance matters? Yes. That's what the ruling was. But as the court ---- And why did they even need to get into that? Why was this an issue? That's another issue for the appeal, and which is that ---- But all I'm trying to say is this just didn't come in because they were trying to suggest that your client had a bad relationship with the union, did it? This only came in because your client was going to testify he couldn't find work because of the defendant's discriminatory conduct and poor references, correct? Yes, and ---- So the only reason the court allowed it in at all was simply to contradict what your client wanted to put forth as his damage issue, right? That is correct with respect to the emotional distress portion of the case, which was dropped. That's the reason it came in, as I understand. The reason that it came in is because the ---- the magistrate judge used an advisory jury on the issue of front pay. Well, I understand that, but I'm just trying to get back to the issue as to why we're even talking about this privilege. I mean, the bottom line is you were ---- you're alleging a privilege, as I understand it, that hasn't been accepted any place except maybe Alaska, and I didn't see this before I walked in here, but except Alaska, and it really ---- Well, I understand that. Why did they want him to testify? Why would they go get him? It was all in an effort to understand or to develop contrary evidence to what your client was trying to present, correct? Yes, but they could have done that in other ways as well. In particular, during the motion in Lemonet arguments, the opposing counsel for ODOT basically admits that the reason he wants Pauli and Meyer to testify is because it's much more powerful to have the union member testify against the plaintiff than it is to have somebody else who's present. Well, I understand that, but I really didn't care what he said, necessarily. What I cared is this is a discretionary decision, isn't it, on the district court's behalf? I have to second-guess him, don't I, if I'm going to suggest that I help your client? So I have to look at why would the district court have allowed this in? Is it implausible? Is it impossible?  The magistrate judge himself was disturbed by the fact that there was no union relations privilege that he could find. And having these persons testify, I mean, you could have an attorney testify against his client, and it would give, you know, it would be great for that side. What was the import of his testimony, not the confidential e-mails, but what was the non-confidential import of the union rep's testimony? The union rep testified as to the process of the going through the collective bargaining and the disciplinary process. Anything objectionable about that? No. There was nothing objectionable about that particular testimony. Only the communications where my client sought advice and was given advice in a grievance process. Okay. That is the crux of the argument, and do you want to reserve any time? Yes. I'll reserve time. Thank you, Mr. Long. Thank you. May I please the Court? Ms. Bjordbeck, on behalf of the defendant, Oregon Department of Transportation in this matter. I would agree with counsel that this matter of whether there is a union officer privilege would be a very interesting issue if, in fact, were presented by this case. We have included in the supplemental excerpts of record the majority of the testimony of these two witnesses, Mr. Myers and Mr. Pauly. And if you look at that, you can see that the magistrate judge, Acosta, was very careful, in fact, to prevent testimony about confidential communications about the grievance. They did testify generally about what the process was. They did testify about e-mails that were sent over the public employer's e-mail system. I don't think it comes as a surprise to any public employee that when you choose to send personal e-mail over the employer's e-mail system, that that e-mail is not confidential. It's part of the public record of that agency, and there simply is no expectation that that will be confidential. If it had been sent from his private computer from home, would the answer be different, then? Well, the problem with that, there was one that was like that, and that is FER-28. The problem was that it was sent to the union rep at his work computer. And so, again, he was choosing to communicate to the inside of the organization. Certainly, had he sent that from his private e-mail to the private e-mail of the union representative, as the union representative's ---- Who did he address it to? I believe that one was addressed to Mr. Pauly, and if you look at the address on it, it says dpauly at o.state.or.us. It was clearly addressed to him at his work address, rather than ---- Which is a government e-mail? That's a government e-mail address? Yes, Oregon Department of Transportation, state.or.us. And you're saying all of these e-mails addressed with an Oregon.gov address is public record? Yes. By what authority? Or at least not a confidential record. They're all public records. What's the authority for that? Well, I think the authority for that would be generally ORS-192-500 and subsequent statutory exemptions. What does that statute say? It, in essence, says that unless specific exemptions apply, all records generated by or held by a public body are public records. So if I send an e-mail to Judge Clifton discussing this case and I send it to his judgeclifton.gov address, that's public record as you see it? It's public record. It might be exempt under an exemption for communications among members of the Court. I was ---- in fact, I would assume that it would be subject to some exemption. The problem here is that communications between employees about work are not subject to any exemption. Is that true even if one of the employees is the union representative for a public employees union? Yes. I mean, most union meetings are going to take place, or many union communications will take place at the workplace. That doesn't necessarily mean the employer has the right to intrude into that session. No. And that certainly would be true. A union meeting would be different, and unions can and do open the door to their members and close the doors to others. The employer provides the space generally as a part of the contract whereby it agrees to do that so that there's a convenient place to meet. So if your client sends you an e-mail at the Attorney General's office, that's public record. Anybody can go look at that? It's a public record. It's subject to an exemption for attorney-client privileged material. Okay. Now, the next question is, they say another privilege applies. They do. They do say another privilege applies. The difficulty is that there's no support that we're aware of other than this, the Alaskan case we were alerted to. So the answer can't be that it's just sent to a government address because we've just agreed that e-mail that goes to you would be privileged under an attorney-client privilege. It's public record, but it is privileged. Okay. It's both. Okay. So if we were to find that this privilege applies, it's not saved by the fact that it's sent to a government e-mail address? Not necessarily. No. You would you first look at whether it's a public record. Clearly it is. Then you look at whether some privilege applies to it. If you find that there is a public officer privilege, I think then you have to look at the content of the e-mails to decide, first of all, whether they really were confidential communications, and secondly, whether they made any difference to the outcome of this case. If you actually look at the content of those e-mails, essentially what they say is, you're on thin ice with your employer, you need to be careful, you need to fill your timesheets out every day, you need not to give them an excuse to go after you. None of that's remarkable, and none of it's particularly harmful. What about ER-28, the one that he isolated as the most damaging? You know, I guess I would agree that that one is the most damaging. The issue there was that there was a step three grievance meeting that Mr. Chai did not tell his direct supervisor that he was going to attend. He apparently assumed that she would know. He put it on his calendar. He went to lunch, and he didn't come back from lunch because he had this step three grievance meeting. And the union representative here is essentially telling him he needs to have some evidence that he did tell her. So let me noodle this through. If there is such a privilege, and if you agree just because they send it to a government, you know, .gov address doesn't automatically make it public, if there's a privilege that applies, just like e-mail that goes to you, and if that's damaging and shouldn't have come in, why isn't that reversible? Well, I think you need to look at, and we've supplied the Court with the magistrate judge's opinion on the motion for new trial. The reason why it's not reversible error is that in the context of the evidence in this case as a whole, it simply made no difference. The plaintiff's case, in essence, consisted of the plaintiff's own testimony. The testimony was contradicted by numerous defense witnesses, credible witnesses, and was also contradicted by documentary evidence that was submitted at the trial. And the magistrate judge goes carefully through that in the order denying the motion for new trial, which is in the supplemental excerpt, and concludes in the context of this case, even if it was error to admit the limited amount of material, he did admit that in the context of this case, it could have made no difference to the outcome. Let me ask you another question, evidentiary issue that concerns me. If I understand it correctly, Myers was on the stand, and on cross-examination was asked if he had any notes on his person, and he said, yes, he did. Yes, that's correct. And then he was asked, did you consult these notes before you testified? And he said, yes, I did. Yes. And then the lawyer said, can I look at the notes? And he said, no, you can't. And then the lawyer said to the judge, would you look at the notes, judge, and see if there's anything in there that I'm entitled to see? And the judge basically told him to go fly a kite. He wasn't going to do it. He wasn't even going to look at them. Isn't that directly contradictory of Rule 612? I don't believe that it is, and here's why. Rule 612 requires those notes to be produced if the interests of justice require. The situation here was that Mr. Myers, who was known to Mr. Chai as a union representative, was on the witness list that the Department of Transportation filed with the court about two months before trial. And so they were on notice that he was going to testify. The time to ask whether he had any notes about Mr. Chai was when they learned that he was going to testify. Well, how do we know he didn't write the notes the night before? I mean, I don't know. The judge didn't even look what notes they were. Well, I don't think the testimony supports that, that what the witness did. The testimony, I mean, it was just like I just recounted it. Do you have notes on you? Yes. Did you look at them? Yes. Judge, would you look at it? He says, we're not going to take the time to do that. And without even knowing what notes they were, whether they were in existence years ago or whether he jotted them down on the way to the courthouse or what they were, the judge didn't look at them or make any inquiry about when they were created, did he? Well, I think that the fair inference from the testimony was that they were notes that he kept in his capacity as a union rep, because his objection to turning them over was not that they concerned Mr. Chai. His objection to turning them over was that they had names and details of other people. Well, maybe they didn't. Maybe they didn't, but it would have been nice if the judge had looked at them and determined what they were before he concluded they weren't discoverable. Well, it might have been nice, but I don't believe that it was reversible error in a context of day four of a jury trial where there's been ample opportunity to do document exchange. How does he know what he's got on his person? I mean, he's got it there. How does he know what he's bringing to court that day? Well, I assume the judge was at least doing some peering over the bench. But clearly, he doesn't. I don't know. I can't, you know, really make a judicial finding that the judge was peeking. Clearly, on some level, the judge was accepting the witness's representation that these are my notes of what occurred, when it occurred, and they also contain None of which is what he said. That's your testifying. He didn't say these are notes I made when they occurred and what they occurred. He said I don't want to turn them over because it contains information about other people also. And the judge, instead of looking at it and trying to redact it as he was asked to do, just said we're not going to take the time today. That's almost a word-for-word quote. We're not going to take the time today. And the question is whether, in the context of day four of a jury trial with a witness that was known two months before, whether it was an abuse of discretion for the court not to say, okay, we're going to send the jury out and we're going to take however long it takes for me to read each page, go through How many pages were there? I don't know. Because the judge didn't look or ask. I don't know. He didn't say how many pages are there, how long are they, or anything like that. I don't think so. I know so. He didn't say that. I think so. I think I remember reading that he had a notebook, but whether that was a tiny notebook or whether it was an 8-inch binder, I don't know. The court simply ruled, did it not, that they could have discovered this before trial and you now have the opportunity to cross-examine, test the credibility and the independent memory of the witness without having the documents. Isn't that what the court said? In essence, yes. And the question for this Court is whether in the context of the trial as a whole, that was an abuse of discretion. I just want to make sure I'm clear from Judge Smith's question. Was there any evidence or inquiry whether these were the preexisting documents that he could have gotten or whether they were notes that were written on the way to the courthouse, anything like that, any way to distinguish these? No, other than the witness was asked if he had reviewed the notes regarding Mr. Chai before testifying, and he said he had. Right. But there's no testimony about when they were created. Not specific testimony about when they were created, no. And again, the question is whether seeing on the witness list the union representative, the attorney could and should have said, well, I want whatever records the union representative has regarding my client before he testifies. And essentially what Judge Acosta did was to say you had the opportunity to do that, and I'm not going to take trial time out now to do something that you could readily have done before we got here and had a jury seated and waiting on us. And it's an abuse of discretion standard. Abuse of discretion is whether it's in the interest of justice. Because as I understand, Rule 612 has all to do with in the interest of justice. My time is almost up, may I answer? I guess I would combine those into whether it was an abuse of Judge Acosta's discretion to find that it was not in the interest of justice to do that. Okay. Thank you. Thank you. Mr. LaRue, it looks like you've got about a minute or so left. Your Honors, I'd just like to make a couple of quick points. One is the public records email in the Oregon statute. Privileges are an exception. In NRLB v. Unbelievable, eavesdropping on union members in a break room on company property was considered an unfair labor practice. It should be no different if it's a virtual break room or in most labor stewards have an email. Mr. Chai did send especially FRE28 with his private email to the union rep. at the ODOT email. So that's not persuasive. The second issue is the standard of review for the privilege is clear error, and that's on page 13 of the appellee's brief. If the court erred in applying the privilege, it's clear error. Well, clear error is not too helpful for you, is it? I'm sorry? Clear error isn't that helpful of a review for you, is it? I mean, de novo would be better for you. Yes. The scope is de novo. So if you erred on the scope, it's de novo. And it looks like you're out of time. Thank you, Mr. LaRue. Thank you. The case just argued is submitted. Good morning, counsel. 11-70819, Metro One Telecommunications v. the Commissioner of Internal Revenue. Each side will have 15 minutes.
judges: Silverman, Clifton, Smith